UNITED STATES DISTRICT
FOR THE DISTRICT OF RHODE ISLAND

MARTIN KAMPITCH, et al, :

Plaintiffs :

vs. : C.A. No. 05-351S ML

ROBERT LACH, et al, :

Defendants :

OBJECTION TO DEFENDANTS'
MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)

Now come the plaintiffs and hereby Object to the Defendants' Motion to Dismiss Under Fed. R. Civ. P. 12(b). An accompanying Memorandum in Opposition to the Motion to Dismiss The Complaint and attached Exhibits support this Objection.

For the reasons described in that Memorandum, plaintiffs respectfully request that the defendants' Motion to Dismiss be denied.

MARTIN KAMPITCH, et al

By their local counsel,

Daniel E. Chaika, Esq. (#3765)
Chaika & Chaika
30 Rolfe Square
Cranston, RI 02910
(401) 941-5070 - telephone
(401) 941-5299 - facsimile

SCANNED

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the 24th day of September, 2005, I caused a true copy of the within Objection to be served by first class mail, postage prepaid, to the following counsel of record:

Raymond M. Ripple, Esquire
Edwards & Angell, LLP
2800 Financial Plaza
Providence, RI 02903

Wood, Herron & Evans, LLP
ATTN: Thomas J. Burger, Esquire
and John Paul Davis, Esquire
2700 Carew Tower
441 Vine Street
Cincinnati, OH 45202-2917

Daniel E. [illegible]
by [illegible]

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MARTIN KAMPITCH, et al. | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | CA 05 351S |
| | ) | |
| ROBERT LACH, et al. | ) | |
| | ) | |
| Defendants | ) | |

MEMORANDUM IN

OPPOSITION TO THE MOTION TO DISMISS THE COMPLAINT

Plaintiffs oppose the motion to dismiss. Red Carpet Studios and Robert Lach are in fact a criminal enterprise. After reviewing Red Carpet's catalog, and comparing it to the patents, designs and copyrights of plaintiffs, it is demonstrably clear that Red Carpet has a pattern and practice of stealing the designs of American craftsmen.

While Red Carpet alleges that it has its own design patents on products similar to plaintiff Flohe's, Red Carpet's designs were made after Flohe's designs were patented, and appear to be substantially similar.

In stark contrast to Red Carpet's contention that it has its own designs on products similar to Mr. Flohe's product, Red Carpet ignores the fact that it has copied a series of plaintiff Frost's copyrighted hat birdhouses. This failure alone demonstrates that Red Carpet had no authorization to copy and has no argument that its copies of plaintiff Frost's copyrighted designs were justified or appropriate.

Red Carpet Studios claims that it is "a small, privately-owned corporation . . . ." Defendants' memorandum at 5. While "small" may mean different things to different people, Red Carpet Studios is actually a multimillion dollar company, possibly worth more than $100,000,000. The *Home and Gift Retailer* reports that the Lach family sold New Creative Enterprises and then

started Red Carpet Studios. A copy of this article is attached to this memorandum as Exhibit 1. According to the *Cincinnati Enquirer,* New Creative Enterprises had 215 full-time employees and 200 temporary employees in 1998. In addition, the *Cincinnati Enquirer* reported that $70 million was invested in the company in 1998. A copy of the *Cincinnati Enquirer* article is attached as Exhibit 2. According to a press release issued by Fenway Partners, New Creative Enterprises had annual sales of approximately $100,000,000 in 1998. A copy of this press release is attached as Exhibit 3. Most people would not consider an enterprise of this magnitude to be "small."

Red Carpet Studios also plays fast and loose with the facts concerning other allegations. It claims that Neil Sater "lost" his case against Red Carpet for copyright infringement. At the same time that it said this it supplied the affidavit of John Paul Davis stating under oath that the case was settled. A loss and a settlement are not the same thing.

## I. Personal Jurisdiction

Red Carpet Studios and Robert Lach have more than the minimum contacts necessary for jurisdiction in Rhode Island. Red Carpet Studios and Robert Lach have sales representatives that call on accounts in Rhode Island. They are represented in Rhode Island by BrassSmith House. A copy of part of BrassSmith's website indicates that it represents Red Carpet Studios and that BrassSmith's has sales representatives who call on stores in Rhode Island. A copy of these webpages are attached as Exhibit 4.

Attached to the Affidavit of John Paul Davis were two design patents similar to the Flohe patents, that are owned by defendant Robert Lach. As an officer and principal owner of Red Carpet Studios, Mr. Lach knowingly allowed his patented products to be sold into Rhode Island.

If the court is unsure of whether these contacts meet the minimum standard for personal

jurisdiction, plaintiffs propose that they be allowed jurisdictional discovery. In *Cirino-Encarnaction v. Concilio de Salud Integral de Loiza*, 317 F.3d 69 (First Cir., 2003) the court ruled "We reverse because the district court was premature in acting on the motion to dismiss when defendant had not produced relevant jurisdictional discovery . . . ." 317 F.3d at 70. Plaintiffs jurisdictional discovery would explore the contacts that defendants have with Rhode Island, their sales in Rhode Island in general and of the infringing products and other business dealing in the state.

The due process cases impose three requirements on the exercise of specific personal jurisdiction over out-of-state defendants. *United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089* (1st Cir. 1992). By contrast, if a defendant has continuous and systematic contacts with the state, courts in the state may exercise general jurisdiction over any cause of action against the defendant. Id. 960 F.2d at 1088.) To begin, the defendant must have purposeful "minimum contacts" with the state. Further, the exercise of jurisdiction must be "reasonable" under the circumstances. The third requirement is that the plaintiffs' claims be related to the defendant's contacts. 960 F.2d at 1089.

The shipment of large quantities of goods into a state, even F.O.B., can satisfy the minimum contacts prong of the due process inquiry. See *Vencedor Mfg. Co., Inc. v. Gougler Indus., Inc.*, 557 F.2d 886, 890-91 (1st Cir. 1971*); Buckeye Assocs., Ltd. v. Fila Sports, Inc., 616 F. Supp. 1484, 1490 n.7 (D. Mass. 1985); Mark v. Obear & Sons, Inc.*, 313 F. Supp. 373, 376-77 (D. Mass. 1970*).*

## I. Venue

If defendants have sold the infringing products in Rhode Island, and meet the requirements for personal jurisdiction, there is no question that venue is proper here. Defendant did not seek a change of venue, only dismissal. Rather than dismiss on venue grounds, plaintiffs submit that the

United States District Court for the Southern District of New York would be an appropriate forum as plaintiff Frost resides there and Red Carpet Studios admits to showing its products at the New York Gift Show and other shows in New York City.

## III. Standing

Plaintiff Frost owns the copyrights to her hat birdhouses and clearly has standing to sue for copyright infringement. If an amendment to the complaint is necessary to provide more detail as to the copyrights owned by Ms. Frost, leave should be freely granted. *Conley v. Gibson*, 355 US 41 (1957). However, it is clear that defendants have been put on proper notice of the claims of the plaintiffs and could find out more details during discovery.

## IV. RICO

The United States Supreme Court has ruled that "RICO is to be read broadly. This is the lesson not only of Congress' self-consciously expansive language and overall approach . . . but also of its express admonition that RICO is to 'be liberally construed to effectuate its remedial purposes.'" *Sedima v. Imrex Company*, 473 U.S. 479 (1985).

There have not been many intellectual property cases joined with RICO claims. However, Justice Breyer noted recently that "deliberate unlawful copying is no less an unlawful taking of property than garden-variety theft. See, *e.g.*, 18 U.S.C. § 2319 (criminal copyright infringement); §1961(1)(B) (copyright infringement can be a predicate act under the Racketeer Influenced and Corrupt Organizations Act); §1956(c)(7)(D) (money laundering includes the receipt of proceeds from copyright infringement)." Justice Breyer, concurring in *Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.* (Case No. 04-480) ,125 S. Ct 2764, ___U.S..___ June 27, 2005. There are four distinct allegations of copyright infringement in the complaint. As only one predicate act is required, plaintiffs have clearly met the test.

The Supreme Court in *Sedima*, *supra*, ruled that civil RICO claims should be liberally construed, and thus these claims should not be dismissed before discovery can be conducted.

### vi. Amendments Should Be Freely Allowed.

Defendants have moved to dismiss the entire complaint. Defendants have raised many technical objections, but all of them can be addressed, if necessary, by amendments to the complaint. Plaintiffs believe that defendant has been properly put on notice by the claims as to the conduct complained of by plaintiffs.

The rules of pleading are not a game. *Conley v. Gibson*, 355 U.S. 41 (1957). The Supreme Court ruled in *Conley* that "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." 355 U.S. at 47. If an amendment is necessary it should be allowed under the rules.

For all of these reasons, the motion to dismiss should be denied.

Joel Joseph (by DC)
JOEL D. JOSEPH, Pro Hac Vice pending
7272 Wisconsin Avenue
Suite 300
Bethesda, MD 20814
(301) 941-1989

DANIEL CHAIKA #3765
CHAIKA & CHAIKA
30 Rolfe Square
Cranston, Rhode Island 02910
(401) 941-5070

CERTIFICATE OF SERVICE

I hereby certify that I mailed a copy of the within Opposition to the Motion to Dismiss the Complaint to Raymond M. Ripple, Esquire at Edwards & Angell, LLP, 2800 Financial Plaza, Providence, RI 02903 and to Wood, Herron & Evans, LLP, Attention Thomas J. Burger, Esquire and John Paul Davis, Esquire, 2700 Carew Tower, 441 Vine Street, Cincinnati, OH 45202-6234 on the 24th day of October, 2005.

Daniel E. Chaika

Daniel E. Chaika, Esquire