UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MARTIN KAMPITCH, et al.

v. CA 05-351ML

ROBERT LACH, et al.

MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' motion to admit attorney Joel D. Joseph pro hac vice pursuant to D.R.I. Loc. R. 5. Defendants have filed an objection. For the reasons set forth below, Plaintiffs' motion is DENIED.

## I. Facts

Plaintiffs filed their complaint on August 17, 2005. The complaint was signed by both Daniel E. Chaika, a member of the bar of this Court, and Joel D. Joseph, who is not a member of the bar of this Court. On October 24, 2005, Plaintiffs filed the motion to admit Mr. Joseph pro hac vice citing Mr. Joseph's "long-standing representation" of "all plaintiffs" and asserting that this case involves a complex area of law, i.e., intellectual property, in which Mr. Joseph specializes.

In support of the motion to admit Mr. Joseph pro hac vice, Mr. Joseph certified that he had "never been disciplined or sanctioned by any court or other body having disciplinary authority over attorneys . . ." He further certified that he had not, during the 24 months preceding October 19, 2005,[1] appeared or applied to be admitted pro hac vice in any cases in this District.

[1]The motion was dated October 19, 2005, but was not filed until October 24, 2005.

The certification was also signed by Mr. Chaika.

On October 28, 2005, Defendants filed an objection to the motion to admit Mr. Joseph pro hac vice. In support of the objection, Defendants filed a memorandum and several appendices. The main thrust of Defendants' opposition is that Mr. Joseph's failure to advise this Court of prior sanctions imposed upon him by three different United States District Courts and his failure to disclose that, in the past 24 months, he had applied *twice* for admission pro hac vice in this District, warrant a denial of the privilege to appear pro hac vice in this matter.

Apparently upon receipt of Defendants' objection and memorandum, on November 15, 2005, Mr. Chaika filed an "Amended Certification for Pro Hac Vice Admission" wherein he advised that he "mistakenly failed to disclose to this Court that last year in . . . C.A. No. 03-0514S, [he] was local counsel to Attorney Joel D. Joseph." Mr. Chaika further averred that "[t]his omission was an oversight. . . ."

Plaintiffs filed a memorandum of law and an affidavit from Mr. Joseph in opposition to Defendants' objection. In the memorandum, Plaintiffs assert that Mr. Joseph "did not understand the local rules of this court to be concerned with sanctions imposed under Rule 37 of the Federal Rules of Civil Procedure, or under similar rules." Mr. Joseph "understood the court to be concerned with bar association and court disciplinary actions for violations of the code of ethics, bar rules, conflicts of interest and the like, not discovery matters." Plaintiffs characterized the "sanctions examples given by defendants [as] symptomatic of cases where a small company or individual sues a large company, and the large company and its team of lawyers, files every conceivable motion, seeking sanctions at every turn." This Court conducted a hearing on the motion to admit Mr. Joseph pro hac vice on November 22, 2005.

II. Sanctions Imposed By Other Courts

Counsel for Defendants informed the Court of several recent instances where Mr. Joseph has been sanctioned by other courts. In October 2003, Mr. Joseph was sanctioned by the District Court for the District of Nevada. See Carpad, Inc. v. Brookstone Co. Inc., No. CV-N-02-0557 (D. Nev. Oct. 24, 2003). In Carpad, the district judge ordered Mr. Joseph to pay a sanction of $1499.99 for his actions in connection with the failed depositions of two witnesses. Id. When Mr. Joseph failed to timely pay the sanction, the opposing party filed a motion to enforce the sanction. In May 2004, Mr. Joseph was ordered to pay that sanction in full and was warned by the court that his failure to do so would result in the court considering revocation of Mr. Joseph's admission to practice pro hac vice. Carpad, Inc. v. Brookstone Co. Inc., No. CV-N-02-0557 (D. Nev. May 10, 2004).

In June 2004, Mr. Joseph was sanctioned by the District Court for the Southern District of Ohio. See Red Carpet Studios Division of Source Advantage, Ltd. v. Sater, No.1:03-CV-00051 (S.D. Ohio June 30, 2004). In Red Carpet, the district judge found that Mr. Joseph "did unreasonably and vexatiously multiply the proceedings" in violation of 28 U.S.C. § 1927. Id. at 5. The court determined that Mr. Joseph's failure to conduct even a "nominal investigation" on the issue of standing caused the court and opposing counsel to waste time and resources preparing for a hearing. Id. at 6. The court also noted that it appeared "at a minimum, Mr. Joseph was being disingenuous with both the [c]ourt and [p]laintiff's counsel regarding his inability to produce [a witness] for deposition." Id. at 4. In October 2004, Mr. Joseph was ordered to pay a sanction of $10,000. See Red Carpet Studios Division of Source Advantage, Ltd. v. Sater, No.1:03-CV-00051 (S.D. Ohio October 20, 2004). The court found that the "net

possible sanction" was $42,294.10, however, the court determined that a sanction of $10,000 was sufficient to deter "future vexatious conduct on the part of Mr. Joseph." Id. at 4. The court suggested that the sanction, coupled with the knowledge that the court could have imposed a much more severe sanction, should be an adequate reminder to Mr. Joseph of his ethical obligations to the court and opposing parties. Id..[2]

In March 2005, a magistrate judge in Carpad ordered "plaintiffs' counsel, Joseph & Associates" to pay another sanction of $2657.39 for Mr. Joseph's part in violating a discovery order. Carpad, Inc. v. Brookstone Co. Inc., No. CV-N-02-0557, slip op. at 5 (D. Nev. March 9, 2005). The court ordered that the sanction be paid within 60 days of the date of the order. Id. Again, Mr. Joseph failed to make payment pursuant to the order. Carpad, Inc. v. Brookstone Co. Inc., No. CV-N-02-0557 (D. Nev. July 28, 2005). In July 2005, after a show cause hearing, the magistrate judge ordered Mr. Joseph to "obtain a cashier's check in the amount of $2657.39 . . . which he shall mail via Federal Express [on August 1, 2005] to the offices of defendant's counsel." Id. at 2. Mr. Joseph was further ordered to file a certificate of service with the court to confirm that payment had been sent to defendant's counsel. Id.

In July 2005, Mr. Joseph was also sanctioned by the District Court for the Middle District of North Carolina. Gardendance, Inc. v. Woodstock Copperworks, Ltd., No. 1:04-CV-00010 (M.D.N.C. July 11, 2005). In Gardendance, a magistrate judge recommended imposing a monetary sanction of $8909.79 for the failure of Mr. Joseph and his clients to appear at properly noticed depositions. Id. at 5, 10. The corporate entity, its two principal shareholders, and Mr.

[2]Plaintiffs have informed this Court that both Carpad and Red Carpet are on appeal. Plaintiffs aver that "few, if any of [the sanctions noted by Defendants and imposed against Mr. Joseph] will be affirmed on appeal."

Joseph were ordered to pay equal shares of the sanction by July 22, 2005. Id. at 10; see also Gardendance, Inc. v. Woodstock Copperworks, Ltd., 230 F.R.D. 438 (M.D.N.C. 2005). The magistrate judge echoed the findings and rationale of the district judge in Red Carpet:

> This motion seeks an order from the court imposing sanctions for the failure of Gardendance, Inc., Mark Donley, Lisa Jordy, and Joel Joseph (hereafter simply the Gardendance parties) to appear for their properly noticed depositions.
>
> . . . .
>
> [The] pretrial period has been characterized by dilatoriness, if not downright mulishness. And during this same time, [the Gardendance parties] have ignored their professional responsibilities to this court. Merely to cite a few examples, they have obtained an order of the court permitting them to file an amended complaint, yet they filed their amended pleading untimely according to the federal rules and the order of the court. They were untimely in responding to Woodstock's motions to dismiss that amended pleading, and were even untimely in seeking an order of the court permitting them to file an out-of-time response. And, not to belabor the point but they have refused to obey an order that they turn over discovery.

Id. at 1, 10.

The magistrate judge noted that the conduct of Mr. Joseph's client, its principal shareholders and Mr. Joseph had been "much more egregious than simply disobeying an order compelling discovery." Id. at 8. The court noted that the parties had been "obstreperous" and "derelict" in dealing with opposing counsel, had ignored their obligations to the court and that their conduct "necessitated" that the court and opposing counsel expend "extraordinary (and scarce) judicial resources which should have been devoted to other matters." Id. at 7, 8-9. As a result of the "continuous and cumulative nature of the obstructive conduct of" the client, its principal shareholders and Mr. Joseph, the magistrate judge recommended that the district court dismiss the complaint. Id. at 9.

In August 2005, the district judge affirmed the sanction order and accepted the dismissal recommendation of the magistrate judge. Gardendance, Inc. v. Woodstock Copperworks, Ltd., 230 F.R.D. 438 (M.D.N.C. 2005). The district judge's decision contains an extensive and detailed procedural history of the case and a litany of the many instances of unacceptable behavior on behalf of Mr. Joseph and his clients. The district judge found that Mr. Joseph, his corporate client and its principal shareholders had shown a "consistent pattern of not only dilatory action, but of contumacious refusal to cooperate in discovery." Id. at 448. The court noted that monetary sanctions had been ordered "multiple" times but had no effect. Id. at 452. The court also noted Mr. Joseph's attempt at misleading the district judge.

> In particular, Mr. Joseph's statements in his Motion for Continuance appear to have been calculated to make this court believe he had a conflict with another court's schedule on July 22, the date of the hearing in Greensboro. The court's own investigation revealed that he had no such court conflict. The court finds this to be a flagrant act of bad faith on his part.

Id. (second emphasis added).

Most notable to the undersigned, however, is that the Gardendance court looked outside the case currently before it and reviewed Mr. Joseph's performance in other matters. Id. (reviewing Carpad and Gardendance v. Alsto's Inc., No. 1:02- CV-00754 (M.D.N.C. Mar. 19, 2004)). The court concluded that Mr. Joseph's "manner of conducting litigation looks to be a consistent pattern. . . ." Id.

As of September 1, 2005, Mr. Joseph had yet to comply with the court's order to pay his share of the sanction. Gardendance, Inc. v. Woodstock Copperworks, Ltd., No. 1:04-CV-00010 (M.D.N.C. Sept. 1, 2005). The district judge noted that "one name appears with regularity when difficulty arises – that is, Joel D. Joseph . . . ." Id. at 1. On September 1, 2005, the district judge

issued an order for Mr. Joseph to show cause why he should not be held in civil contempt for failing to pay the sanction as ordered by the magistrate judge and for failing to appear at a hearing and a mediation conference as directed by the court. Id. at 4. In the show cause order, the district judge noted: "[i]n what has become typical conduct for Mr. Joseph, he has responded without complying with the local rules of [the] court . . . ." Id. at 2. The show cause hearing was set for October 17, 2005 at 4:00 p.m. Id. at 4. Mr. Joseph did not attend the show cause hearing. Gardendance, Inc. v. Woodstock Copperworks, Ltd., No. 1:04-CV-00010 (M.D.N.C. Oct. 19, 2005). The matter has been referred to a magistrate judge for further action. Id. at 3.

## III. Activity in This District

On November 10, 2003, in the District of Rhode Island, Mr. Joseph filed the complaint in Bonazoli v. R.S.V.P. International, Inc., C.A. No. 03-514S (D.R.I.). The complaint was signed by Mr. Joseph. On November, 17, 2003, Mr. Joseph filed a motion to appear pro hac vice on behalf of plaintiff. That motion was denied on December 30, 2003, as a result of Mr. Joseph's failure to associate with local counsel as required by the local rules of this District. Bonazoli v. R.S.V.P. International, Inc., C.A. No. 03-514S (D.R.I. December 30, 2003). After the court denied the motion and warned Mr. Joseph (by issuing a show cause order) that the complaint would be dismissed if plaintiff did not engage an attorney admitted to practice in this District, the complaint was in fact dismissed for plaintiff's failure to engage a local attorney. Bonazoli v. R.S.V.P. International, Inc., C.A. No. 03-514S (D.R.I. February 27, 2004). Ultimately, upon motion of the plaintiff, the court vacated the dismissal order and granted plaintiff's motion to reopen the case. Bonazoli v. R.S.V.P. International, Inc., C.A. No. 03-514S (D.R.I. April 7, 2004). A second motion to appear pro hac vice was filed and granted in April 2004, after Mr. Joseph engaged Mr.

Chaika as local counsel. Bonazoli v. R.S.V.P. International, Inc., C.A. No. 03-514S (D.R.I. April 12, 2004).

IV. The Law

There is no Sixth Amendment protection for the "denial of chosen counsel in a civil case." Young v. City of Providence, 404 F.3d 4, 24 (1st Cir. 2005) (emphasis added).[3] A district court has substantial inherent power to manage and control its calendar. In re Atlantic Pipe Corp., 304 F.3d 135 (1st Cir. 2002). A court's inherent power includes the power to regulate practice before it in any manner consistent with federal law and applicable rules. Id. Pro hac vice admission is considered a privilege and not a right. Thomas v. Cassidy, 249 F.2d 91 (4th Cir. 1957), cert. denied, 355 U.S. 958 (1958). In the District of Rhode Island, pro hac vice admissions are governed by local rule 5. The decision to grant or deny a motion for pro hac vice admission is a matter within the discretion of the court. D.R.I. Loc. R. 5(c).

Generally, motions for pro hac vice admission are granted as a matter of course. See generally Kohlmayer v. National Railroad Passenger Corp., 124 F. Supp. 2d 877, 880 (D.N.J. 2000). In this District, 98 percent of the 478 applications for admission pro hac vice filed from January 1, 2004, to the present have been granted. Of the 7 applications that were denied, none were denied for cause. Pursuant to local rule 5, attorneys "for good cause shown upon written

[3]In Young, the First Circuit noted that at least one other circuit has held that an erroneous denial of a civil litigant's chosen counsel can raise a Fifth Amendment Due Process claim. Young, 404 F.3d at 24 n.15 (citing In Re BellSouth Corp., 334 F.3d 941, 955 (11th Cir. 2003)). In Young, the First Circuit stated, however, that it was "rare, although perhaps possible, that a denial of a civil party's chosen counsel could rise to the level of a Fifth Amendment violation." 404 F.3d at 24 n. 15. Even BellSouth recognized that "a litigant's freedom to hire the lawyer of his choice can be overridden if a court finds that the choice would interfere with the orderly administration of justice." BellSouth, 334 F.3d at 956; see generally Panzardi-Alvarez v. United States, 879 F.2d 975, 980 (1st Cir. 1989), cert. denied, 493 U.S. 1082 (1990).

motion of a party, may, in the Court's discretion, be admitted pro hac vice . . . ." D.R.I. Loc. R. 5(c) (emphasis added). A party seeking admission of counsel pro hac vice must complete and submit a motion and certification form. Id. at 5(c)(1). The attorney requesting admission certifies, among other things, that he/she has "never been disciplined or sanctioned by any court or other body having disciplinary authority over attorneys" and that he/she "[d]uring the past 24 months" has not "appeared or applied to be admitted in any cases in this district." Attorney's Certification for Pro Hac Vice Admission ¶¶ 2, 4. If the attorney has been disciplined or sanctioned or has appeared or applied for admission during the past 24 months, the attorney is required to provide the pertinent details. Id. The attorney also certifies that he/she has "read, acknowledge[d], and agree[d] to observe and to be bound by the local rules and orders of this Court. . . ." Id. at ¶ 6. The attorney also acknowledges that he/she has associated with local counsel and will observe the requirements of the District respecting the participation of local counsel. Id. at ¶ 7.

The First Circuit has recognized the authority of a district court to deny pro hac vice admissions as a result of ethical violations. Panzardi-Alvarez v. United States, 879 F.2d 975, 981 (1st Cir. 1989), cert. denied, 493 U.S. 1082 (1990); see also, D.H. Overmyer Co. v. Robson, 750 F.2d 31 (6th Cir. 1984) (evidence of conflict of interest not reported to the court); Thomas v. Cassidy, 249 F.2d 91 (4th Cir. 1957), cert. denied, 355 U.S. 958 (1958) (unlawyerlike conduct). "It is . . . appropriate . . . for the court to consider the effect of [an] attorney's past actions (especially past ethical violations) on the administration of justice within the court." Panzardi, 879 F.2d at 980.

In Erbacci, Cerone, and Moriarty, Ltd. v. United States, 923 F. Supp. 482, 483 (S.D.N.Y.

1996), the court denied pro hac vice admission based upon counsel's "serious lack of understanding regarding appropriate practice" before the court. In Erbacci, counsel filed a motion in spite of the fact that he had not been admitted to practice before the court. Id. at 485. The court determined that counsel had violated the local rules, and as a result, denied the motion. Id. The court also noted that counsel's motion for admission pro hac vice was deficient in that it was not brought by an attorney admitted to practice before the court but was rather brought by a non-admitted attorney seeking pro hac vice admission. Id. at 486. The court suggested that by submitting the motion counsel may have engaged in the unauthorized practice of law. Id.

A district court has denied pro hac vice admission as a result of an attorney's behavior resulting in "reprimands . . . and wasted judicial time." Kohlmayer v. National Railroad Passenger Corp., 124 F. Supp. 2d 877, 878 (D.N.J. 2000). The question before the Kohlmayer court was the same as that before this court: whether it was proper for the court to consider evidence of past inappropriate and unprofessional behavior by counsel in other matters in determining whether counsel should be permitted to practice before the court. Id. at 879-80. The Kohlmayer court concluded that past misconduct in other matters is an appropriate consideration in deciding whether to grant a motion to appear pro hac vice.

> Where a court is made aware of a pattern of . . . behavior by an attorney, bordering on the unethical, which has resulted in the waste of judicial time in the past, it must have discretion to deny the otherwise leniently granted pro hac vice applications in the interest of judicial economy.

Id. at 883.

## V. Discussion

Mr. Joseph's behavior causes this Court great pause. On October 19, 2005, Mr. Joseph

certified that during the past 24 months he had not appeared or applied to be admitted pro hac vice in any case in this District. Mr. Joseph also submitted an affidavit to this Court stating that he had never been denied "pro hac vice status by any court." (Joseph Affidavit ¶ 11.) That statement, as well as Mr. Joseph's certification that he had not appeared or applied to appear pro hac vice in this District within 24 months of October 19, 2005, are false. Mr. Joseph failed to list the Bonazoli matter in his certification submitted to this Court. Mr. Joseph had in fact applied for admission pro hac vice in this District within 24 months of October 19, 2005, once in November 2003 (which was denied) and again in April 2004.

Mr. Joseph's actions in the instant matter and Bonazoli are contrary to our local rules. See generally D.R.I. Loc. R. 5. Mr. Joseph signed the complaint in this matter before being admitted to practice before the Court. By signing and filing the complaints in Bonazoli and this matter, without having been granted permission to appear pro hac vice, Mr. Joseph violated this District's local rules. See generally D.R.I. Loc. R. 5. Because he did not have pro hac vice status in either the instant matter or Bonazoli, he was not recognized as an attorney. See generally The Nationalist Movement v. City of Boston, 201 F.3d 428, 1999 WL 700497 *1 (1st Cir. Sept. 2, 1999) (unpublished) (reviewing District of Massachusetts local rule governing pro hac vice admission and noting that "an attorney who lacks pro hac vice status may be viewed as being on the same footing as a non-lawyer"). Consequently, Mr. Joseph was not authorized to represent a party (other than himself, pro se) and therefore may have engaged in the unauthorized practice of law. See Erbacci, 923 F. Supp. 482.

With respect to Mr. Joseph's failure to advise this Court of sanctions imposed by other courts, Mr. Joseph asserts that he did not understand paragraph two of the certification form to

require him to make such disclosures. On this point, this Court gives Mr. Joseph the benefit of the doubt since the certification form language may reasonably be read to contain the limitation relied upon by Mr. Joseph. This does not mean, however, that this Court will now close its eyes to a pattern of misconduct that has been brought to its attention by Defendants in this case.

In his affidavit, Mr. Joseph attempts to minimize the sanctions imposed in Carpad, Red Carpet and Gardendance. He avers that "[n]one of the sanctions discussed [in his affidavit] involved questions of ethical conduct." (Joseph Affidavit ¶16 (emphasis added)). In each of those cases, however, the judicial officer found that Mr. Joseph had breached his professional responsibilities. In Red Carpet, the district judge stated that it appeared Mr. Joseph had been "disingenuous" with both the court and opposing counsel. Red Carpet Studios Division of Source Advantage, Ltd. v. Sater, No.1:03-CV-00051, slip op. at 4 (S.D. Ohio June 30, 2004). In Gardendance, the magistrate judge found that Mr. Joseph had ignored his professional responsibilities to the court. Gardendance, Inc. v. Woodstock Copperworks, Ltd., No. 1:04-CV-00010, slip op. at 10 (M.D.N.C. July 11, 2005). The court also found that Mr. Joseph had been "derelict" in dealing with opposing counsel. Id. at 8. In direct conflict with Mr. Joseph's assertion that his past sanctions did not involve questions of ethical conduct, the district judge in Red Carpet imposed the sanction specifically to remind Mr. Joseph of "the ethical obligations owed by counsel to the court and opposing parties." Red Carpet, No.1:03-CV-00051, slip op. at 4 (S.D. Ohio October 20, 2004) (emphasis added). This Court rejects Mr. Joseph's assertion that his past sanctions did not involve questions of professional ethics.

Mr. Joseph's "prior behavior provides a lens through which [Mr. Joseph's] conduct [before this Court] should be examined, and as such, is relevant to the issue presented. . . ." In re

Complaint of PMD Enterprises Inc., 215 F. Supp. 2d 519, 524 (D.N.J. 2002). Mr. Joseph has engaged in a pattern of behavior that has resulted in the wasting of judicial resources. Monetary sanctions seem to have had no impact on Mr. Joseph's professional conduct; in fact, it appears that his modus operandi is to ignore them, thereby vexatiously and unreasonably multiplying the proceedings.

In their memorandum Plaintiffs argue that "[a] fundamental premise of the adversary system is that individuals have the right to retain the attorney of their choice to represent their interests in judicial proceedings." Richardson-Merrell Inc. v. Koller, 472 U.S. 424, 441 (1985) (Brennan, J., concurring). Plaintiffs fail to place Justice Brennan's quote in proper context and ignore significant qualifying language that directly follows the language quoted. Justice Brennan added:

> [t]o be sure, that right [to retain counsel of choice] is qualified. A court need not, for example, permit an individual to retain anyone at all, regardless of qualifications, to represent him in open court. Nor must a court continue to permit an individual to be represented by an attorney who by his misconduct in open court has threatened the integrity of the proceedings.

Id. (emphasis added). This Court finds significant and substantial evidence that Mr. Joseph's past and current behavior before other courts presages more of the same here.

At oral argument, Mr. Joseph suggested that the only "fair way" to decide this matter is to grant Mr. Joseph's motion to appear pro hac vice, and, if Mr. Joseph were to act in a manner that the Court objected to, the Court could exercise its authority to revoke his pro hac vice admission. See generally Sedona Corp. v. Ladenburg Thalmann & Co., Inc., No. 03Civ.3120(KMW)(THK), 2003 WL 22339357 (S.D.N.Y. Oct. 14, 2003). This Court rejects Mr. Joseph's suggestion. "The question . . . is whether the hands of this Court are tied, such that it must admit [counsel] pro hac

vice and then hold its breath for the duration of trial in hopes that [misconduct] will not result." Kohlmayer, 124 F. Supp. 2d at 882.

There is "peril on the seas in front of [the Court] based upon the past [and continuing] conduct" of Mr. Joseph. Id. at 881 (internal quotation omitted). Mr. Joseph's history in federal court proceedings is replete with repeated instances of unacceptable conduct. Numerous monetary and non-monetary sanctions imposed by other courts have had little, if no, remedial affect. "There must . . . be some point, some line at which an attorney's repeated, documented, instances of [inappropriate] behavior, whether or not rising to the level of a disbarable offense, strips him of the privilege of pro hac vice admission." Id. at 883. "When forewarned with a substantial amount of evidence that an attorney is likely to hinder the litigation process, a court should not and cannot be forced to grant a pro hac vice application of that attorney." Id. at 882.

This Court denies Plaintiff's motion to admit Mr. Joseph pro hac vice based upon Mr. Joseph's false representation to this court, his failure to comply with local rules in this and other districts, and his recent, consistent and significant history of grossly unacceptable conduct in other courts. The proper and orderly administration of justice requires such a decision.

VI. Conclusion

For the above reasons, the motion of Plaintiffs to admit Mr. Joseph pro hac vice is DENIED.

SO ORDERED

Mary M. Lisi
Mary M. Lisi
United States District Judge
December 14, 2005